Filed 4/17/13  P. v. Penaloza CA4/3
Opinion following recall of remittitur

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G044756 |
| v. | (Super. Ct. No. 10CF0027) |
| ALBERTO PENALOZA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed in part, reversed in part.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Annie Featherman Fraser, Deputy Attorney General, for Plaintiff and Respondent.

\*          \*          \*

In our prior nonpublished case, *People v. Penaloza* (June 28, 2012, G044756), we affirmed defendant's convictions for assault with a firearm, felon in possession of a firearm, possession of methamphetamine while armed with a loaded firearm, and two counts of active participation in a criminal street gang. After our decision, the California Supreme Court issued its opinion in *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), and concluded that a defendant who acts alone cannot be convicted of the substantive offense of active participation in a criminal street gang. This was one of the grounds defendant raised on appeal.

On March 22, 2013, relying on *People v. Mutch* (1971) 4 Cal.3d 389 [recall of remittitur adjunct to writ of habeas corpus and proper to implement defendant's right to habeas corpus where defendant convicted under statute that did not prohibit his conduct at the time], defendant's appellate counsel and the Attorney General filed an application and a stipulation requesting that we recall the remittitur, vacate our prior opinion, and issue a new opinion reversing defendant's convictions for active participation in a criminal street gang. Under these circumstances, we grant the motion as defendant stands convicted and sentenced under an invalid theory of active participation in a criminal street gang. We shall recall the remittitur, vacate our prior opinion, and order that a new remittitur issue that reverses the active participation in a criminal street gang convictions and affirms defendant's remaining convictions.

I

FACTS

A jury convicted defendant of assaulting Katherine J. with a firearm (Pen. Code § 245, subd. (a)(2); all statutory references are to the Penal Code unless otherwise stated; count three), felon in possession of a firearm (former § 12021, subd. (a)(1) (Stats. 2008, ch. 599, § 4); count five), and active participation in a criminal street gang (§ 186.22, subd. (a); count eight) on December 31, 2009. It also convicted him of possession of methamphetamine for sale (Health & Saf. Code, § 11378; count six),

2

possession of methamphetamine while armed with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a)(1); count seven), and active participation in a criminal street gang (count 10) on January 3, 2010. The jury found defendant was personally armed with a firearm (§ 12022, subd. (c)) in connection with the possession of methamphetamine for sale. The remaining charges of residential robbery (§§ 211, 212.5, subd. (a), 213, subd. (a)(1)(A); count one), assault with a firearm (§ 245, subd. (a)(2); count two), dissuading a witness (§ 136.1, subd. (c)(1); count four), and enhancements alleged in connection therewith, were dismissed by the court at the close of the prosecution's case when the alleged victim in those counts, Ruby R., refused to testify, even after being granted immunity and held in contempt.

In the bifurcated portion of the trial, the court found defendant had previously been convicted of a serious felony (§ 667, subd. (a)(1)), suffered a prior conviction under the "Three Strikes" law (§§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1)) and served three prior terms in state prison (§ 667.5, subd. (b)).

The court denied defendant's invitation to strike his prior strike conviction for sentencing purposes pursuant to section 1385 and sentenced him to an aggregate term of 17 years in prison. The court imposed a principal term of six years (upper term of three years doubled, based on defendant's prior strike conviction) for possession of methamphetamine for sale, a consecutive four-year term for the section 12022, subdivision (c) (personally armed with a firearm) enhancement attached to that count, a consecutive two-year term for defendant's conviction for assault with a firearm (one-third the midterm doubled), and a consecutive five-year term on the serious felony prior conviction enhancement. Terms on other counts were either ordered to run concurrently or were stayed pursuant to section 654. The terms for defendant having served prior terms in state prison were stricken for sentencing purposes.

Katherine J. placed an advertisement for an additional roommate for her three-bedroom apartment on Craig's List. By New Year's Eve 2009, Ruby R. responded

3

to the ad and moved in. About 7:00 or 8:00 that evening, Ruby R. came home and prepared to go out to a club. Katherine J. was in her room and heard what sounded like whimpering. She left her room to check on Ruby R. In the living room, she saw defendant hitting Ruby R. Ruby R. was on the corner of the couch, curled up into a ball, with her hands covering her head. Defendant stood over Ruby R., and hit her three or four times with his fists. He also hit her with a black gun.[1]

Katherine J. called out for defendant to stop. Defendant then pointed the black gun at her. Katherine J. screamed, ran back to her bedroom, closed the door, locked it, went into the closet, and called 911. The police arrived and had Katherine J. sit on the steps outside her apartment while they conducted a "sweep" to determine if anyone was in the apartment. They found Ruby R. inside Katherine J.'s closet. An officer noticed a bruise on Ruby R.'s right arm and had photographs taken of her injuries. Three days after the incident, Ruby R. said she sustained multiple bruises in the beating.

A pair of black Oakley sunglasses was obtained from the apartment and swabbed for the presence of DNA. Tests on the swab revealed there were multiple sources of DNA on the glasses. Defendant's DNA matched that of one of the two major contributors of the DNA on the sunglasses. Defendant's DNA profile "is rarer than one in 70 million."

Detective Colton Kirwan of the Tustin Police Department was dispatched to Katherine J.'s location. Upon arriving, he saw a black Lexus drive out of the complex, turn right, and head northbound on Williams Street. It was moving rapidly with its headlights off. Kirwan could not tell whether the first digit on the license plate was a 3 or an 8 because there was some kind of mark on the plate. Officer Charles Mitchell was dispatched to the area and was told to be on the lookout for a black sedan with no headlights on. He saw a vehicle matching the description northbound on Williams Street.

---

[1] The parties stipulated defendant had previously been convicted of a felony.

4

He pulled his squad car in behind the vehicle and attempted to stop the vehicle. When he turned on his overhead lights, the vehicle continued driving normally. But when he turned on his siren, the vehicle sped up. At one point during the chase, the vehicle drove the wrong way on a one-way street. Mitchell lost sight of the vehicle when it was travelling the wrong way on the one-way street. The vehicle was found later that night in territory claimed by the McClay Street gang.

On January 3, 2010, Detective James Mansoor was part of a surveillance being conducted on an apartment on Santa Clara in Santa Ana. He was looking for defendant and saw him leaving the apartment. He ordered defendant to stop and put his hands up, but defendant ran in the opposite direction, throwing his jacket to the ground. A search of the jacket revealed two syringes and a plastic baggie containing what was believed to be methamphetamine.

Mansoor searched the apartment under surveillance. In a bedroom believed to be defendant's, he found defendant's driver's license, Social Security card, and pay stubs. He also located several documents bearing defendant's name in a vanity in the bathroom connected to the bedroom. A loaded Smith and Wesson nine-millimeter semiautomatic handgun was found between the mattress and the box spring of the one bed in the bedroom. A Tupperware container containing 3.25 grams of methamphetamine was found approximately six feet from the bed. A baggie found in the bathroom contained .69 grams of methamphetamine. Another contained .44 grams of methamphetamine. No drugs were located in any other bedroom or in any common area.

Mansoor also found a digital scale and a pay-owe sheet. The scale was on the vanity in the bathroom. The pay-owe sheet was found in the nightstand of the bedroom. "McClay Street" was written on the inside cover of the spiral notebook containing the pay-owe sheet. "Scrappy" was also written on the notebook.

Mansoor said drug dealers use such scales, and a pay-owe sheet is a "crude accounting" method for street level drug dealers. He added that the amount of

5

methamphetamine found in the apartment was substantial and is not commonly found on the street. He opined the methamphetamine was possessed for sale and based his opinion on the amount of methamphetamine and the presence of the pay-owe sheet and scales.

*Gang Evidence*

Nicholas Lopez of the Tustin Police Department testified as a gang expert. He said McClay Street is a Hispanic street gang and described the territory claimed by the gang. He also testified about two predicate offenses committed by McClay Street gang members. The gang's primary activities include felony possession of firearms and narcotic sales. The area in which the chase of the black Lexus ended is in McClay Street territory.

"Respect" is important to gangs. Members seek respect from other gangs by committing crimes of violence and bragging about their crimes. Carrying guns, even by one prohibited from possessing a firearm, furthers the member's reputation and assists in the commission of criminal acts. Gangs view tattoos as badges of honor. Tattoos involve a level of commitment and demonstrate the individual's loyalty to the gang: the more tattoos, the more loyalty.

Defendant has a number of McClay Street tattoos. He has a tattoo on his neck signifying alliance with southern Hispanic gangs. He has a tattoo representing the number 13. The 13th letter in the alphabet (M) refers to the Mexican Mafia. "McClay Street" is tattooed on his left forearm. He also has a "MC" tattoo and one of the gang's symbol — "Magicos" — tattooed across his stomach. Additionally, he has a tattoo referring to another gang member.

A month before his arrest, defendant wrote "McClay St" in concrete by his residence. The notebook containing the pay-owe sheet contained his moniker, Scrappy. People who are not members of a gang do not claim to be in the gang. A false claim of membership risks physical harm. Lopez opined defendant was an active participant in the

6

McClay Street gang on the charged dates.  In reaching this conclusion, he considered a field investigation card and a STEP[2] notice served on defendant in 2006, four or five police reports involving defendant, and that defendant previously admitted he committed a felony for the benefit of, at the direction of, or in association with the McClay Street gang, and admitted he actively participated in the gang.

II

DISCUSSION

A. *Gang Evidence Issues*

1. *The Expert's Opinion That Defendant was an Active Participant*

Trial courts have wide discretion in determining the relevance of evidence. (Evid. Code, § 350; *People v. Babbitt* (1988) 45 Cal.3d 660, 681.)  "'Broadly speaking, an appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion.'  [Citation.]  This standard of review applies to a trial court's determination of the relevance of evidence, as well as to whether the evidence's probative value is substantially outweighed by its prejudicial effect.  [Citations.]  The trial court's 'discretion is only abused where there is a clear showing [it] exceeded the bounds of reason, all of the circumstances being considered.'  [Citation.]"  (*People ex rel. Lockyer v. Sun Pacific Farming Co*. (2000) 77 Cal.App.4th 619, 639-640.)  The same holds true when the evidence under consideration is a gang expert's testimony.  "As a general rule, a trial court has wide discretion to admit or exclude expert testimony.  [Citations.]  An appellate court may not interfere with the exercise of that discretion unless it is clearly abused.  [Citation.]"  (*People v. Page* (1991) 2 Cal.App.4th 161, 187.)

Defendant contends the trial court erred in permitting the gang expert to testify defendant was an active participant in the McClay Street gang.  He argues an expert opinion was unnecessary because the jury was equally able to decide whether

---

[2] STEP is an acronym for Street Terrorism Enforcement and Prevention. (See § 186.20.)

7

defendant's tattoos, his prior convictions, the gang writing in the small notebook, and the other facts of the case prove he was an active participant in a criminal street gang.

In discussing gang expert testimony in *People v. Olguin* (1994) 31 Cal.App.4th 1355, another panel of this court held "[t]he requirements for expert testimony are that it relate to a subject sufficiently beyond common experience as to assist the trier of fact and be based on matter that is reasonably relied upon by an expert in forming an opinion on the subject to which his or her testimony relates. [Citations.] Such evidence is admissible even though it encompasses the ultimate issue in the case. [Citations.]" (*Id*. at p. 1371.) "Otherwise admissible expert opinion testimony which embraces the ultimate issue to be decided by the trier of fact is admissible. (Evid. Code, § 805.)" (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 651.) "'There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case.' [Citations.] '"[T]he true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved . . . . Oftentimes an opinion may be received on a simple ultimate issue, even when it is the sole one, . . . because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in."' [Citation.]" (*People v. Valdez* (1997) 58 Cal.App.4th 494, 507.) Contrary to defendant's assertion, the expert's conclusion that defendant was an active participant in the criminal street gang did not "direct[] the jury to find the active participation element true" any more than any other expert opinion involving an ultimate issue.

An expert's opinion is not admissible when it merely "'consists of inferences and conclusions which can be drawn as easily and intelligently by the trier of fact as by the witness.' [Citations.]" (*People v. Valdez*, *supra*, 58 Cal.App.4th at p. 506.) The opinion was appropriately admitted in this case. The McClay Street gang is no fraternity. It apparently does not have rules and regulations reduced to writing, such that

8

a jury may simply look to the writing to determine whether an individual is an active member. As a criminal street gang, its culture, habits, and psychology are still "'sufficiently beyond common experience'" such that the opinion of an expert may be deemed helpful to the jury. (*Ibid*.) Accordingly, the trial court reasonably concluded the testimony would assist the jury in determining whether defendant was an active participant in the gang. Because we find the trial court did not abuse its discretion in permitting the gang expert to opine defendant was an active participant in the gang, we necessarily find the trial court did not usurp the jury's role and did not deny defendant due process.

2. *Insufficient Evidence of the Gang Offenses (Counts Eight and Ten)*

Defendant was convicted of two counts of active participation in a criminal street gang in violation of section 186.22, subdivision (a). He contends the evidence was insufficient to support those convictions in that the prosecution failed to present any evidence he aided or abetted any felony conduct by members of the McClay Street gang. We agree.

"The substantive offense defined in section 186.22[, subdivision] (a) has three elements. Active participation in a criminal street gang, in the sense of participation that is more than nominal or passive, is the first element of the substantive offense defined in section 186.22 [, subdivision] (a). The second element is 'knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and the third element is that the person 'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' [Citation.]" (*People v. Lamas* (2007) 42 Cal.4th 516, 523.)

In *Rodriguez, supra,* 55 Cal.4th at page 1128, defendant acted alone in committing an attempted robbery. A jury convicted him of attempted robbery and active participation in a criminal street gang under section 186.22, subdivision (a). (*Id.* at p. 1129.) The issue in *Rodriguez*, like the issue raised here, was whether the third element

9

of the crime described in section 186.22, subdivision (a)—willfully promoting, furthering, or assisting in any felonious criminal conduct by members of the defendant's gang—can be satisfied by felonious criminal conduct committed by the defendant acting alone. (*Ibid.*) The court held that it cannot, and expressly disapproved of prior cases to the extent they are inconsistent with *Rodriguez*. (*Id.* at p. 1137, fn. 8.)

Section 186.22 requires the criminal conduct must be committed "'by members of that gang.'" (*Rodriguez*, *supra*, 55 Cal.4th at p. 1131.) The *Rodriguez* court noted "members" is a plural noun (*id.* at p. 1132), and concluded "[t]he plain meaning of section 186.22[, subdivision] (a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member. [Citation.]" (*Ibid.*) The court held the defendant could not be convicted of violating section 186.22, subdivision (a) because he had acted alone in committing the attempted robbery. (*Id.* at p. 1139.)

*Rodriguez* is controlling here. Because defendant acted alone in committing the crimes upon which the prosecution relied to establish the third element of the substantive gang offense, the evidence is insufficient to support defendant's gang convictions. Accordingly, we reverse defendant's convictions on count eight and 10.

B. *Jury Instruction Issues*

Defendant alleges the court erred in instructing the jury in three instances. "The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citations] and also whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration [citations]." (*People v. Posey* (2004) 32 Cal.4th 193, 218.) If an instruction is found to have lessened the prosecution's burden of proof, a majority of the courts have found the error requires reversal unless the prosecution can establish beyond a reasonable doubt the

error was harmless.  (*People v. Roder* (1983) 33 Cal.3d 491, 504.)[3]

### 1.  *CALCRIM No. 3131*

Defendant was charged with being personally armed while he possessed methamphetamine for sale.  The methamphetamine he was charged with possessing for sale was found in what the jury could reasonably have concluded was his bedroom at a time when defendant was not present.  The police also found a loaded nine-millimeter semiautomatic handgun underneath the mattress to the bed that was but six feet away from the methamphetamine.

In *People v. Bland* (1995) 10 Cal.4th 991, a case involving an analogous scenario, the Supreme Court found *Bland* subject to the section 12022, subdivision (c) enhancement for being personally armed while possessing drugs, notwithstanding the fact that he was not present when the drugs and firearm were discovered.  The court held "a defendant convicted of a possessory drug offense [is] subject to [a section 12022] 'arming' enhancement when the defendant possesses both drugs and a gun, and keeps them together, but is not present when the police seize them from the defendant's house." (*People v. Bland*, *supra*, 10 Cal.4th at p. 995.)

Noting one is armed within the meaning of the statute if the individual has the firearm "available for use, either offensively or defensively" (*People v. Bland*, *supra*, 10 Cal.4th at p. 997), the court concluded that drug possession is a crime of a continuing nature and if the defendant "has a weapon available at any time during the felony to aid in its commission, the defendant is 'armed with a firearm in the commission . . . of a felony.'"  (*Id*. at p. 999.)  The court summarized its holding as follows:  "[W]hen the prosecution has proved a charge of felony drug possession, and the evidence at trial shows that a firearm was found in close proximity to the illegal drugs in a place

---

[3] Because we have concluded the evidence does not support defendant's convictions for violating section 186.22, subdivision (a), we do not address his argument that CALCRIM No. 1400 misstates the law.

11

frequented by the defendant, a jury may reasonably infer (1) that the defendant knew of the firearm's presence, (2) that its presence together with the drugs was not accidental or coincidental, and (3) that, at some point during the period of illegal drug possession, the defendant was present with both the drugs and the firearm and thus that the firearm was available for the defendant to put to immediate use to aid in the drug possession.  These reasonable inferences, if not refuted by defense evidence, are sufficient to warrant a determination that the defendant was 'armed with a firearm in the commission' of a felony within the meaning of section 12022."  (*Id*. at pp. 1002-1003.)

In connection with the personally armed firearm enhancement (§ 12022, subd. (c)) attached to count six (possession of methamphetamine for sale), the court instructed the jury pursuant to CALCRIM No. 3131.  The modified instruction included the following language based on the *Bland* decision to which defendant objects:  "If the People have proved that a firearm was found close to the methamphetamine in a place where the defendant was frequently present, you may, but are not required to conclude that:  [¶] 1. The defendant knew the firearm was present; [¶] 2. It was not accidental or coincidental that the firearm was present together with the drugs; and [¶] 3. During at least part of the time[] the defendant allegedly possessed the illegal drug, he had the firearm close at hand or available for immediate use to aid in the drug offense.  [¶] If you find beyond a reasonable doubt that the evidence supports these conclusions, you may but are not required to conclude that the defendant was personally armed with a firearm in the commission of count six."  He contends the quoted portion of instruction, although a correct statement of the law, was argumentative, improperly pointed the jury to specific prosecution evidence and directed the jury how it should interpret that evidence, reducing the prosecution's burden of proof and denying him a fair trial.

Defendant did not object to the instruction.  Although one must generally object to an instruction correct in the law in order to raise the issue on appeal, we may consider the issue if it affects the defendant's substantial rights.  (*People v. Zamudio*

12

(2008) 43 Cal.4th 327, 353.)  We may also address the issue to preclude a claim of ineffective assistance of counsel.  (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1156.)  The latter reason is founded on a desire to preserve limited judicial resources and may be particularly appropriate when the relative merit of the underlying contention — that the instruction was improper — can easily be resolved on the initial appeal.  (See *People v. Cox* (1991) 53 Cal.3d 618, 682, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Defendant cites cases standing for the proposition that instructions that "invite the jury to draw inferences favorable to one of the parties from specified items of evidence" are impermissible, because such instructions are argumentative.  (*People v. Gordon* (1990) 50 Cal.3d 1223, 1276; *People v. Wright* (1988) 45 Cal.3d 1126, 1135-1138.)  He cites *Quercia v. United States* (1932) 289 U.S. 466, for the proposition that a court may not instruct a jury with instructions favoring one of the parties.  *Quercia* is inapposite.  In *Quercia*, the complaint was not with the trial court's instructions.  Rather, the defendant's complaint had to do with the judge's comments on the evidence:  "'And now I am going to tell you what I think of the defendant's testimony.  You may have noticed, Mr. Foreman and gentlemen, that he wiped his hands during his testimony.  It is rather a curious thing, but that is almost always an indication of lying.  Why it should be so we don't know, but that is the fact.  I think that every single word that man said, except when he agreed with the Government's testimony, was a lie."  (*Id*. at p. 468.)  The high court found the trial judge overstepped his bounds in declaring his belief the defendant was lying.  "His definite and concrete assertion of fact, which he had made with all the persuasiveness of judicial utterance, as to the basis of his opinion, was not withdrawn.  His characterization of the manner and testimony of the accused was of a sort most likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence."  (*Id*. at p. 472.)

13

The trial judge in the present matter did not comment on whether he believed or disbelieved any of the evidence. Rather, he simply instructed the jury pursuant to the recommended modification of CALCRIM No. 3131. The instruction was even-handed. Unlike the impermissibly slanted instruction provided in *People v. Owens* (1994) 27 Cal.App.4th 1155,[4] the court did not instruct the jury that the prosecution had introduced evidence "'tending to prove'" the defendant committed the charged acts. As the court in *Owens* noted, "Instructing the jury that the People have introduced evidence 'tending to prove' appellant's guilt carries the inference that the People have, in fact, established guilt." (*Id.* at p. 1158.) In the present case, the trial court instructed the jury it *may*, but is not required to, make certain conclusions "[*i*]f the People have proved that a firearm was found close to the methamphetamine in a place where the defendant was frequently present." (Italics added.)

It has long been the law in this state that a court may properly instruct a jury as to inferences it may, but is not required to, draw from the evidence. (*People v. Carmen* (1951) 36 Cal.2d 768, 773.)[5] Indeed, CALCRIM is replete with instructions permitting, but not requiring, a jury to draw certain inferences from evidence. (See e.g, CALCRIM Nos. 371 [consciousness of guilt, suppression or fabrication of evidence], 372 [defendant's flight], 376 [possession of recently stolen property], 1860 [opinion of value of property], 2100 [if .08 blood-alcohol level when tested, may infer defendant was under the influence when driving], 2101 [if .08 blood-alcohol level when tested, may infer

---

[4] "'The People have introduced evidence *tending to prove* that there are more than three acts of substantial sexual conduct or lewd and lascivious conduct upon which a conviction in Count I may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt and you unanimously agree that the defendant committed three such acts.'" (*People v. Owens*, *supra*, 27 Cal.App.4th at p. 1158, italics added.)

[5] Of course a court may not instruct the jury the same evidence creates a presumption that the fact to be inferred has been established. (*People v. Roder* (1983) 33 Cal.3d 491, 504-505.)

14

defendant had .08 level when driving], 2220 [may infer defendant knew license was suspended if prosecution proves notice of suspension mailed to most recent address and not returned as undeliverable or unclaimed], 2641 [if defendant made statements different from those in affidavit, may find statements in affidavit are false], 2801 [if prosecutor proved beyond a reasonable doubt certificate from Franchise Tax Board stating no tax return was filed, may conclude return was not filed], 2981 [may find failure to support was willful if prosecutor proved defendant knew of child and failed to provide support], 2811 [if proved defendant's name is signed on tax return, may conclude defendant was signer].)

The instruction was an accurate statement of the law. (*People v. Bland*, *supra*, 10 Cal.4th at pp. 1002-1003.) It was not slanted in favor of the prosecution and merely informed the jury as to a permissible inference it could draw from testimony if it accepted the evidence as true.[6]

2. *CALCRIM No. 372*

CALCRIM No. 372 is the standardized flight instruction. The court instructed the jury as follows: "If the defendant fled or tried to flee immediately after the crimes charged on January 3rd of 2010, or after he was accused of committing a crime, that conduct may show he was aware of his guilt. If you conclude that the defendant fled or tried to flee, [it is] up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself." Defendant contends the instruction was improper in that it permitted the jury to infer defendant's guilt from his flight and in this case, the inference lacked a rational basis. The constitutionality of CALCRIM No. 1400 has been upheld by the courts. (See e.g.,

---

[6] Although we find the court did not err in instructing the jury pursuant to the modified version of CALCRIM No. 3131, we reject respondent's characterization of the instruction. The court did not instruct the jury defendant was personally armed with a firearm while possessing drugs for sale. Had the court done so, it would have denied defendant due process of law. (*People v. Flood* (1998) 18 Cal.4th 470, 502-503.)

15

*People v. Paysinger* (2009) 174 Cal.App.4th 26, 30; *People v. Hernández Ríos* (2007) 151 Cal.App.4th 1154, 1159; *People v. Mendoza* (2000) 24 Cal.4th 130, 179-180 [upholding CALJIC flight instruction as constitutional].) In fact, defendant's argument was expressly rejected in *People v. Hernández Ríos*, *supra*, 151 Cal.App.4th at pp. 1158-1159.) We agree with the *Hernández Ríos* court's holding.

Contrary to defendant's contention, CALCRIM No. 372 did not permit the jury to draw an irrational inference from his flight. When defendant fled from the police, he threw aside his jacket, which incidentally contained the evidence of his possession of methamphetamine. Inside the abandoned jacket, the police found a plastic baggie containing what was believed to be methamphetamine, as well as two syringes. While it could be argued he got rid of the jacket to make himself lighter and faster in an effort to make his getaway, it was not unreasonable to infer defendant ran and got rid of his jacket during the flight because he did not wish to get caught with the contraband on his person. A flight "instruction is properly given if the jury could reasonably infer that the defendant's flight reflected consciousness of guilt. [Citatation.]" (*People v. Howard* (2008) 42 Cal.4th 1000, 1020-1021.) Consequently, the court did not err in instructing the jury pursuant to CALCRIM No. 372.

C. *Defendant's Romero Motion*

A trial court has the discretion to strike for purposes of sentencing a prior conviction found true under the Three Strikes law. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529-530.) We review a trial court's refusal to strike a prior strike conviction for an abuse of discretion. (*People v. Williams* (1998) 17 Cal.4th 148, 162.) "'[D]iscretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered. [Citation.]' [Citation.]" (*People v. Green* (1995) 34 Cal.App.4th 165, 182-183.)

The purpose of the Three Strikes law is to punish recidivism (*People v. Murphy* (2001) 25 Cal.4th 136, 155) by providing longer prison sentences for individuals who "'have been previously convicted of serious and/or violent felony offenses.'" (*In re Young* (2004) 32 Cal.4th 900, 909.) In deciding whether to strike a prior conviction and remove the defendant from the enhanced sentencing scheme provided by the Three Strikes law, the court "'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*In re Large* (2007) 41 Cal.4th 538, 552.)

The trial court did not abuse its discretion in this matter. As the court found, defendant's prior "strike" conviction for robbery not only qualifies as a serious felony (§ 1192.7, subd. (c)(19)), it also qualifies as a violent felony (§ 667.5, subd. (c)(9)) and was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). Although the prior conviction occurred in 1999, 10 years before the instant offenses, defendant committed other felonies in the interim and served state prison terms for those violations. The triggering "strike" prior conviction cannot, given this circumstance, be deemed remote. (See *People v. Green*, *supra*, 34 Cal.App.4th at p. 183 [20-year-old felony prior conviction admissible to impeach despite remoteness because the witness "did not subsequently lead a blameless life"].) In this matter defendant was convicted of two counts of active participation in the same criminal street gang he previously committed a crime for, as well as another serious felony. (§ 245, subd. (a)(2); § 1192.7, subd. (c) [assault with a firearm is a serious felony].) Additionally he was convicted of possessing methamphetamine for sale. The sale of narcotics is one of his gang's primary activities. And, in both instances defendant was armed with a firearm, something he is not permitted to possess even if possession was not in connection with felonies. Even

17

after being arrested on this matter, defendant has been unable to bring his conduct in line. He received write-ups in jail for possessing "pruno" (see *People v. Abilez* (2007) 41 Cal.4th 472, 489 ["an alcoholic drink brewed illicitly in county jail by inmates"]) and Seroquel.  Defendant is not outside the spirit of the Three Strikes law; he is the dangerous, violent repeat offender the statutory scheme was meant to affect.  The trial court did not abuse its discretion in denying defendant's invitation to strike his sole prior "strike" conviction.

## III

## DISPOSITION

The application to recall the remittitur is granted.  We recall the remittitur, vacate our prior opinion, and order a new remittitur issue that reverses defendant's convictions for active participation in a criminal street gang (counts eight and 10).  The clerk of the superior court is directed to prepare an amended abstract of judgment and send a certified copy to the Department of Corrections and Rehabilitation.  In all other respects the judgment is affirmed.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.


18